EUSEBIO, HERMENEGILDA, MIGUEL y ROMUALDO ALICEA VÁZQUEZ, como únicos componentes de la SUCN. DE RUFINO ALICEA ERAZO, demandantes y apelados, *v.* CORTE MUNICIPAL DEL DISTRITO JUDICIAL MUNICIPAL DE BAYAMÓN, HONORABLE F. MARCHAND SICARDÓ, JUEZ, demandada; ARMANDO A. MIRANDA, interventor y apelante.

Núm. 6826.—*Sometido:* Junio 8, 1937. Resuelto: Noviembre 10, 1937.

*Armando A. Miranda,* demandante en el pleito principal, por su propio derecho como interventor y apelante; *Dubón & Ochoteco,* abogados de los apelados.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del tribunal.

El presente es un recurso de apelación interpuesto contra una sentencia de una corte de distrito dictada en un procedimiento de *certiorari* por virtud de la cual se anuló otra pronunciada por una corte municipal en un pleito sobre cobro de honorarios.

De los autos resulta que el once de junio de 1932 Armando A. Miranda, abogado, demandó en la Corte Municipal de Bayamón, a "John Doe y Richard Roe, o sea la Sucesión desconocida de Rufino Alicea Erazo" en cobro de trescientos diez dólares, valor de servicios profesionales que prestara en vida a su causante. En la demanda alegó que había tratado de saber quiénes eran los componentes de la sucesión que designó en la forma que conocemos, para que le pagaran su crédito, sin resultado.

El mismo día once de junio solicitó el demandante aseguramiento de la sentencia que pudiera dictarse, medida que fué acordada acto seguido por la corte previa prestación de cuatrocientos dólares de fianza.

Expedido el emplazamiento, fué devuelto con la manifestación de no haberse cumplido "por ser personas desconocidas John Doe y Richard Roe, o sea la sucesión desconocida de Rufino Alicea Erazo."

El demandante presentó a la corte entonces una moción sobre citación por edictos, acompañada de una declaración jurada haciendo constar lo que sigue:

"Que los demandados John Doe y Richard Roe, son las personas desconocidas que integran la Sucesión de Rufino Alicea Erazo, quien falleció en Bayamón de Puerto Rico, allá en o por el mes de enero de 1932.

"Que la demanda en este caso es sobre cobro de honorarios profesionales.

"Que desde principios del año 1930 hasta su fallecimiento, el demandante estuvo prestando servicios profesionales al señor Rufino Alicea Erazo causante de los aquí demandados John Doe y Richard Roe, o sea la Sucesión desconocida de Rufino Alicea Erazo.

"Que dichos servicios profesionales fueron prestados por el demandante al fenecido Rufino Alicea Erazo, a requerimiento de dicho Rufino Alicea Erazo, hoy interfecto.

"Que el importe de dichos servicios profesionales razonablemente monta a la suma de trescientos diez dólares ($310.00).

"Que a su fallecimiento, Rufino Alicea Erazo, adeudaba dicha suma al demandante, sin que la hubiera satisfecho ni en todo ni en parte.

"Que el demandante ha tratado de saber quiénes son John Doe y Richard Roe, o sea la sucesión desconocida de Rufino Alicea Erazo, para que dicha sucesión desconocida, le satisfaga el importe de dichos servicios profesionales, sin que hasta la fecha el demandante haya podido conocer dicha sucesión desconocida.

"Que el importe adeudado por los demandados al demandante no le ha sido pagado a éste, ni en todo ni en parte, ni por los demandados, ni por ninguna otra persona a su nombre.

"Que dicha suma de trescientos diez dólares ($310.00) está vencida, y es líquida y exigible.

"Que el demandante cree tener una buena y justa causa de acción, los cuales ha podido determinar por él ser abogado en ejercicio.

"Que el emplazamiento en el presente caso ha sido devuelto sin diligenciar por no ser encontrados John Doe y Richard Roe, o sea la sucesión desconocida de Rufino Alicea Erazo, quienes son personas enteramente desconocidas y cuyo paradero se ignora.

"Que a los efectos de la prosecución del presente caso, el demandante necesita que dichos John Doe y Richard Roe, o sea la sucesión desconocida de Rufino Alicea Erazo, sean citados mediante la publicación de los correspondientes edictos."

La corte ordenó la citación y los edictos fueron publicados en "La Correspondencia de Puerto Rico." Nadie compareció y el demandante pidió al secretario que anotara la rebeldía de la parte demandada. Lo hizo así el secretario en septiembre 23, 1932, y el demandante solicitó de la corte

la inclusión del pleito en el calendario y el señalamiento de fecha para la presentación de prueba.

Sigue en la transcripción de los autos la sentencia dictada por la corte municipal en octubre 4, 1932, declarando la demanda con lugar.

Así las cosas y después de haberse ejecutado la sentencia, el 16 de marzo de 1933 compareció en el pleito la "Sucesión demandada" formada por "sus hijos reconocidos Eusebio, Hermenegilda, Miguel y Romualdo Alicea y Vázquez" pidiendo a la corte que dejara sin efecto la rebeldía anotada, la sentencia dictada y la subasta efectuada y le permitiera radicar la contestación acompañada. Alegaron que sólo tuvieron conocimientos del pleito cuando la subasta, que los bienes subastados por $75 valían $700 y que el demandante no obstante jurar lo contrario, sabía quiénes componían la sucesión de Rufino Alicea. La moción está firmada por el abogado José S. Alegría y está jurada por uno de los miembros de la sucesión.

El demandante se opuso y celebrada una vista, la corte resolvió la moción el 23 de mayo de 1933 declarándola sin lugar.

El 21 de noviembre del mismo año comparecieron de nuevo en el pleito los componentes de la sucesión demandada por medio de sus abogados y radicaron una moción sobre nulidad de sentencia. A ella se opuso el demandante basándose en que los demandados se sometieron a la jurisdicción de la corte al radicar su anterior moción y en que la cuestión de nulidad que levantaban había quedado resuelta desde mayo 23, 1933.

Oídas sobre la moción ambas partes, la corte la declaró sin lugar por resolución de febrero 2, 1934. Fué entonces que los herederos de Alicea se dirigieron a la corte de distrito radicando en ella una petición de *certiorari* el 14 de marzo de 1934.

La corte de distrito expidió el auto y oídas las partes interesadas dictó la sentencia a que nos referimos al principio

de esta opinión, declarando nula la de la corte municipal. Emitió una extensa opinión que sintetiza ella misma como sigue:

"6.—Apareciendo, en síntesis, que en el *affidavit* que sirvió de base para la expedición de la orden disponiendo que fuera citada por edictos la sucesión demandada no contiene una relación de hechos que sirviera al juez para formar su propio juicio acerca de que a pesar de las distintas diligencias practicadas se ignoraba su domicilio, pues la aseveración hecha por el declarante no constituye la manifestación de un hecho definitivo como se exige en toda alegación ni de un hecho probatorio del cual pueda deducirse tal hecho definitivo ni un hecho de clase alguna que en forma tal tienda legalmente a probar tal hecho definitivo o probatorio o del cual éste pueda inferirse; que en el diligenciamiento negativo del emplazamiento ocurre lo mismo, por lo que tampoco presta base, de suponer que la prestase, por insuficiente, ya que el declarante relata una conclusión, y no hechos; que es constante la jurisprudencia de que la declaración en que pueda basarse una orden sobre citación de edictos debe contener hechos que demuestren los requisitos exigidos por la ley, y que tal procedimiento debe ser estricta y cuidadosamente seguido; que el hecho de una comparecencia, después de anotada la rebeldía implica sujeción a la jurisdicción sólo para todo procedimiento subsiguiente, pero no de un modo retroactivo que convalide procedimientos anteriores viciados de nulidad; que siguiendo el texto y espíritu del artículo 140 del Código de Enjuiciamiento Civil éste se observa mejor resolviendo los casos por sus méritos sustanciales de tal modo que más bien se ayude que se impida o destruya los fines de la justicia, y que en este procedimiento concurren todas estas circunstancias, la petición debe ser y es declarada con lugar."

No conforme el demandante en el pleito en cobro de honorarios, apeló para ante esta Corte Suprema. Señala en su alegato siete errores que argumenta separadamente. Los demandados contestaron de igual modo.

Como puede verse la resolución de este caso depende de si la citación por edictos que se hizo confirió o no jurisdicción a la corte municipal sobre la parte demandada y de si aunque no la confiriera dicha parte se sometió luego o no a la jurisdicción de la corte.

██ La citación por edictos está autorizada por la ley. Artículo 94 del Código de Enjuiciamiento Civil. Pero para que pueda ordenarse y ser efectiva es necesario que se cumpla estrictamente con el estatuto. ¿Se cumplió en este caso? Una respuesta en la negativa se impone, de acuerdo con los hechos y la ley. Dijo a ese respecto la corte sentenciadora en su opinión:

"Para que la corte inferior pudiera dictar la orden mandando citar a la sucesión demandada por medio de edictos era necesario que mediante declaración jurada resultasen comprobados estos hechos: 1, que después de la debida diligencia la parte demandada no pudo ser encontrada en la Isla o que se ignoraba su domicilio; y 2, que existe motivo de acción contra el demandado.

"En cuanto al primer elemento, la declaración jurada que se ofreció en este caso a la corte inferior contiene los siguientes extremos:

" '. . . Que el demandante ha tratado de saber quiénes son John Doe y Richard Roe, o sea la sucesión desconocida de Rufino Alicea Erazo, para que dicha sucesión desconocida le satisfaga el importe de dichos servicios profesionales, sin que hasta la fecha el demandante haya podido conocer dicha sucesión desconocida.

" ' . . Que el emplazamiento en el presente caso ha sido devuelto sin diligenciar por no ser encontrados John Doe y Richard Roe, o sea la sucesión desconocida de Rufino Alicea Erazo, quienes son personas enteramente desconocidas y cuyo paradero se ignora.'

"En *Forbes* v. *Hyde*, 31 Cal. 342 (véase *Goldsmith* v. *Villari*, 27 D.P.R. 794, 799) se dice:

" 'El hecho debe aparecer mediante *affidavit* antes que exista jurisdicción para dictar la orden. Es decir, debe existir un *affidavit* conteniendo la manifestación de un hecho que sea evidencia legal y que tenga una tendencia perceptible a demostrar el hecho de la jurisdicción, para que el Juez pueda actuar sobre él, antes que tenga jurisdicción alguna para dictar la orden. A menos que el *affidavit* contenga tal clase de evidencia, tendente a establecer todos los hechos materiales relativos a la jurisdicción, el juez no tiene poder legal para quedar satisfecho, y si dicta la orden actúa sin jurisdicción, siendo nulos todos los procedimientos que de ella dimanen.'

"¿Qué hecho aparece mediante declaración jurada en este caso? Simplemente que el declarante ha tratado de saber quiénes forman

la sucesión desconocida de Rufino Alicea Erazo sin que haya podido conocer dicha sucesión. Pero como se dice en *Forbes* v. *Hyde*, supra:

" ' . . . tal aseveración ni constituye la manifestación de un hecho definitivo como se exige en toda alegación, ni de un hecho probatorio del cual pueda deducirse tal hecho definitivo, ni un hecho de clase alguna que en forma alguna tienda legalmente a probar tal hecho definitivo o probatorio o del cual pueda éste inferirse. No es realmente la manifestación de un hecho. Es meramente la manifestación de una opinión del declarante con respecto a un punto sobre el cual el juez habrá de formar su propio juicio basándose en hechos que deberán aparecer mediante *affidavit* . . . Los hechos son debidamente la única materia propia a tener expresión en los *affidavits* que se hagan bajo las disposiciones del estatuto relativo a las notificaciones como base de la acción judicial. La expresión general por el declarante de una opinión o creencia, sin los hechos en que se basa no es en sentido alguno evidencia legal, y no tiende en ningún alcance a probar los hechos relativos a la jurisdicción sin los cuales el juez no tenía facultad para dictar la orden.'

"En *Braly* v. *Seaman*, 30 Cal. 611 (véase de nuevo *Goldsmith* v. *Villari*, supra) se dice:

" 'Un *affidavit* en tal caso debe narrar hechos que demuestren que se ha empleado la debida diligencia y debe aparecer de él también que eso no obstante el demandado no ha podido encontrarse.

" 'Si el *affidavit* bajo el cual se expide una orden de citación es insuficiente, la corte no adquiere jurisdicción sobre el demandado, y la sentencia es nula.'

"En *Galpin* v. *Page*, 3 Saw. 93, 85 ·U. S. 350, la Corte Suprema de los Estados Unidos declaró que bien interpretado el estatuto, éste 'exige que se incorpore prueba completa de los hechos relativos a la jurisdicción en el legajo de la sentencia;' que cuando la notificación constructiva por publicación está autorizada por el estatuto en lugar de la citación personal, debe seguirse estrictamente el estatuto, regla que no ha sido negada por ninguna corte estadual y que había sido repetidamente enunciada del modo más enfático por la Corte Suprema de California y citó los casos de *Jordán* v. *Giblin*, 12 Cal. 100; *Ricketson* v. *Richardson*, 26 Cal. 149; *Forbes* v. *Hyde*, supra.

"Una declaración jurada de esta naturaleza debe interpretarse estrictamente. *Véase O'Sheaf* v. *Corte*, 38 D.P.R. 257, 259, dónde se añadió:

" 'No es éste un caso en que la discreción de la corte está envuelta y donde pueda concederse mayor liberalidad en la interpre-

tación de declaraciones juradas, *Martínez* v. *Sánchez*, 33 D.P.R. 839, sino que la declaración jurada es una condición precedente para que la corte adquiera jurisdicción.'

"En cuanto se refiere al segundo elemento, la declaración jurada revela la existencia de una causa de acción.

"Pero es que la existencia de cualquiera de las condiciones especificadas en el estatuto no es por sí solo suficiente. 1 Sutherland, Code Pleading, Practice and Forms, 656; *Cintrón* v. *Registrador*, 35 D.P.R. 805, 810. Como se dijo en *García & González* v. *Registrador*, 41 D.P.R. 666, 668:

" 'De acuerdo con ese precepto y por no estar jurada la demanda, la declaración que presentó el demandante debió contener en este caso dos requisitos bajo juramento para que la · orden de citación por edictos pudiera dictarse, a saber, que el demandado no reside en la isla y que existe motivo de acción contra él. El primero fué cumplido pero no el segundo y por esto la corte no estuvo autorizada para ordenar la citación por edictos y no adquirió jurisdicción sobre la persona del demandado ni autoridad para vender sus bienes.'

"En *Ricketson* v. *Richardson*, 26 Cal. 149, 155 y *Steinbach* v. *Leese*, 27 Cal. 295, 299, se dice:

" 'Cuando se solicita esta clase de notificación, los procedimientos deben ser escudriñados cuidadosamente y cumplirse estrictamente con todas las disposiciones de la ley; de lo contrario tales disposiciones podrían conducir a un abuso craso y hacerse depender los derechos de las personas y de propiedad de las conciencias elásticas de partes interesadas, más bien que del claro juicio de una corte o juez.'

"Hasta aquí parece evidente que en el procedimiento seguido en cobro de honorarios y que tuvo por resultado la venta judicial de bienes de los peticionarios, la corte municipal no adquirió jurisdicción sobre la sucesión demandada porque la orden disponiendo la notificación del emplazamiento por edictos se dictó sin jurisdicción. La sentencia por tanto, era nula, así como su ejecución. *Cintrón* v. *Registrador*, supra.''

¿Adquirió luego la corte a virtud de las mociones de la parte demandada de marzo 16 y noviembre 21 de 1933 la jurisdicción que le faltaba? Otra respuesta en la negativa se impone de acuerdo con los hechos y la ley. Dijo a ese respecto la corte sentenciadora en su opinión:

"2. Consta en los autos que la alegada sucesión se apersonó mediante moción jurada, pidiendo se dejara sin efecto la rebeldía y pidiendo permiso para radicar una excepción previa de falta de jurisdicción sobre su persona y una contestación en que se niegan los hechos esenciales relatados en la demanda, documentos ambos que acompañó a su moción. Se alega que esto constituyó una comparecencia general de la sucesión demandada; y que quedó así curado todo defecto jurisdiccional. No lo entendemos así. Advertiremos antes que es necesario tener en cuenta que la corte inferior declaró sin lugar la moción sobre apertura de rebeldía y negó el permiso solicitado para radicar los documentos acompañados.

"La sucesión demandada no llegó a ser tenida por personada por sus escritos de excepciones y de contestación porque al negársele el permiso para radicarlos ello impidió que ocurriera la pretendida comparecencia. La sucesión intentó comparecer. Pidió permiso para radicar sus alegaciones en contra de las pretensiones del demandante. Pero no se le permitió. Se le rehusó el permiso, a instancias del allí demandante aquí interventor.

"Véase *Andino* v. *Knight*, 20 D.P.R. 198, 202, en que por haberse ordenado por la corte la eliminación de una excepción previa se consideró por ello borrada de los autos tal comparecencia. O como se dice allí:

" 'Pero sostiene el apelado que el demandado no puede alegar ahora esos defectos porque su comparecencia subsanó los defectos que pudiera tener la diligencia de citación. Este argumento hubiera sido bueno si se le hubiera tenido por personado por su excepción, pero no en este caso en que la eliminación decretada a instancia del apelado borraba de los autos tal comparecencia.'

"Pero, la moción en sí solicitando la apertura de rebeldía ¿constituyó, acaso, una comparecencia voluntaria? A ello nos parece suficiente responder citando de *Hernaiz Targa & Co.* v. *Vivas*, 20 D.P.R. 106, 112, lo siguiente:

" 'En el caso *In re Clarke*, 125 Cal. 388, la Corte Suprema de California estableció la siguiente doctrina que luego ratificó en el de *Security etc., Co.*, v. *Boston, etc., Co.*, 126 Cal. 418: "En principios generales, la alegación de que una parte comparece ante la corte especialmente para un fin determinado, no tiene consecuencia alguna. Si al comparecer lo hace con el solo fin de oponerse a que la corte considere el caso o a que tenga lugar algún procedimiento en el mismo, basado en que la corte no ha adquirido jurisdicción sobre la persona del demandado, la comparecencia tiene un carácter especial y ninguna declaración en ese sentido es necesaria en la noti-

ficación o moción, o tendría algún efecto en el caso de que se hiciere. Por el contrario si comparece y solicita algún remedio que sólo puede concederse a una parte en un caso pendiente, o que constituya un procedimiento regular del caso, la comparecencia tiene un carácter general a pesar de que especialmente se afirme en la misma lo contrario. Es la naturaleza del remedio que se solicita lo que hay que considerar, y no la intención de la parte de que su comparecencia tenga o no el carácter de una comparecencia general.'' Véase también el caso de *Nisbet* v. *Clio Mining Co.*, 2 Cal. App. 436.'

''No obstante, hay algo más, que no debe escaparse a una ligera observación. El artículo 98 del Código de Enjuiciamiento Civil dice que la comparecencia voluntaria de un demandado, y ahora volvemos a referirnos a la moción sobre apertura de rebeldía en sí, es equivalente a la diligencia de su citación personal y entrega de la copia de la demanda; y que desde la entrega de la citación y de la copia de la demanda se considerará que la corte ha adquirido jurisdicción sobre las partes y que ha quedado sometido a dicha corte todo procedimiento subsiguiente. El hecho de que la sucesión compareciera la dejó sometida a todo procedimiento subsiguiente; pero ello no significaba que con su comparecencia daba validez a anteriores procedimientos nulos.

''En *Franceschi* v. *Sepúlveda*, 27 D.P.R. 118, 121, se lee:

'' 'El abogado José Tous Soto en representación del demandado Carlos Toro Labarthe compareció ante la corte de Ponce en moción de 11 de julio de 1918 solicitando que fuera citado de evicción para contestar la demanda, Héctor Santí Franceschi, y esa comparecencia fué general, equivaliendo por tanto al emplazamiento personal del demandado Toro Labarthe. *Hermaiz Targa & Co.* v. *Vivas*, 20 D.P.R. 106 y *Aparicio Hermanos* v. *H. C. Christianson & Co.*, 23 D.P.R. 493. Desde que el demandado Toro Labarthe hizo su comparecencia general ante la corte de Ponce quedó sometido a su jurisdicción para todo procedimiento subsiguiente, pero no de un modo retroactivo que convalidara procedimientos anteriores viciados de nulidad. 2 Ruling Case Law (párrafo 13) pág. 332.'

'' 'La comparecencia general de Toro Labarthe no impide que pueda solicitar la apertura de la rebeldía anotada anteriormente ...' ''

█ Habiendo llegado a las anteriores conclusiones tras un estudio detenido del caso y después de haber considerado todas las cuestiones que suscita el apelante en sus alegatos de 7 de febrero y noviembre 27 de 1936, creemos que pudo

recurrirse al *certiorari* no obstante haberse dejado de apelar de las resoluciones de la corte municipal de mayo 23, 1933, y febrero 2, 1934, y obtenerse dentro de él la declaración de nulidad de la sentencia de octubre 4, 1932, dictada contra la parte demandada sin que la corte hubiera adquirido jurisdicción sobre la misma.

Como bien dijo la corte de distrito en su repetida opinión:

"3.—Como cuestión de ley la moción de apertura de rebeldía debió declararse con lugar en vista de que los procedimientos seguidos para citar a la sucesión demandada no habían sido conducidos debidamente. Cuando la sentencia en rebeldía es nula en su faz por falta de jurisdicción, demostrado así de una simple inspección del legajo del juicio, puede dejarse sin efecto en cualquier tiempo, después de haberse registrado sin sujeción al término prevenido por el artículo 140 del Código de Enjuiciamiento Civil. *Torres* v. *Alfaro*, 24 D.P.R. 731; *Freiría* v. *Félix*, 20 D.P.R. 159. Es teoría establecida que una diligencia que es enteramente nula puede ser impugnada en cualquier fecha y el mero silencio o inacción por parte del demandado no implica que ha renunciado sus derechos. *Bennet* v. *Hernández*, 22 D.P.R. 348, 351."

*Debe declararse sin lugar el recurso y confirmarse la sentencia apelada.*

El Juez Asociado Señor Córdova Dávila no intervino.